**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| STS RENEWABLES LTD., et al.,[1] | Case No. 25-10884 |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

**DECLARATION OF SEAN ZWEIG IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Sean Zweig, to the best of my information and belief, state as follows:

1. I submit this declaration (this "Declaration") in support of the Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code (the "Verified Petition")[2] filed by STS Renewables Ltd. ("STS Renewables"), in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors", the "Company", or "Subterra"), which are the subject of jointly-administered proceedings (the "CCAA Proceedings") under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "CCAA") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"). Concurrently herewith, the Foreign Representative has filed voluntary petitions for relief under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") for each of the Debtors. All facts set forth in this Declaration are based

---

[1] The Debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with the last four digits of each Debtor's unique identifier, are: STS Renewables Ltd. (6458); Earth Drilling Co. Ltd. (2067); On Track Drilling Inc. (0775); Subterra Capital Partners Inc. (1618); Subterra Development Ltd. (8868); Earth Drilling Co. Ltd. (5471); STS Renewables Earth USA Acquisition Co. Ltd. (9095); Harris Exploration Drilling & Associates Inc. (9416); and Subterra Capital Partners US Inc. (0344). The Debtors' service address for purposes of these Chapter 15 Cases is 365 Bloor St. E, Suite 400, Toronto, Ontario, Canada M4W 1H7.

[2] For the avoidance of doubt, capitalized terms used but not defined herein shall have the meaning given to them in the Verified Petition.

on: (a) my knowledge; (b) my review of relevant documents; and/or (c) my opinion based upon my experience and knowledge of the Debtors' operations. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. I am a partner in the firm of Bennett Jones LLP ("Bennett Jones"), 3400 One First Canadian Place, P.O. Box 130, Toronto, Ontario, Canada M5X 1A4, where my broad-ranging practice focuses on restructuring and insolvency matters. Bennett Jones acts as Canadian counsel to the Debtors, whose CCAA Proceedings are pending before the Canadian Court. I appeared before the Canadian Court as counsel of record seeking the Initial CCAA Order. I graduated from the University of Western Ontario with a BA in 2004, the Schulich School of Business at York University in 2008 with an MBA, and Osgoode Hall Law School in 2008 with an LLB. I was admitted to the Ontario Bar in 2009. I have experience acting for debtor corporations and large corporate groups, lenders, bondholders and other creditors, court appointed officers (*e.g.*, CCAA monitors), investors, and acquirers. Over the course of my career, I have been involved in numerous proceedings under the CCAA, as well as proceedings under federal and provincial corporate and/or insolvency legislation.

## I. CCAA PROCEEDINGS

### A. Overview of CCAA Restructuring Process

3. The CCAA process begins when a company files an initial application—often on an *ex parte* basis—in the court in the jurisdiction where the company's headquarters or principal place of business is situated for protection under the CCAA. The initial application must, *inter alia*, be accompanied by: (a) projected weekly cash flow statements; (b) a statement regarding the preparation of the cash-flow statements; and (c) copies of all audited or unaudited financial

statements prepared during the year prior to the application or, if no such statements were prepared in that year, a copy of the most recent such statement. *See* CCAA at 10(2).

4. Upon the filing of the initial application, the court may enter an order staying all proceedings and actions against the company and its property as well as against its directors and officers for an initial period that does not exceed 10 days. *See* CCAA at 11.02(1). This period may subsequently, from time to time, be extended by the CCAA court for such period of time as the CCAA court deems appropriate in the context of the company's restructuring process.

5. Once the court enters an initial order approving the initial application, the court will at the same time appoint a licensed insolvency trustee to serve as a "monitor" of the business and financial affairs of the company.[3]

6. The Initial CCAA Order and the Amended and Restated Initial CCAA Order may also include, among other things, (a) authority to disclaim certain contracts; (b) a prohibition on the payment of prefiling obligations, subject to certain permitted exceptions; (c) authority to pay any outstanding wages, salaries, employee and pension benefits, as well as other entitlements and expenses; (d) authority to pay certain taxes; and (e) a prohibition on sales over a certain monetary threshold outside the ordinary course of business without court approval. *See* CCAA at 11.09(2).

7. Prior to 2009, there was an on-going debate over whether creditor protection under the CCAA was appropriate to allow for an orderly liquidation of a debtor company. In 2009, the CCAA was amended to include, *inter alia*, statutory rights in favor of debtor companies to sell their assets outside of the ordinary course of business and outside of a CCAA plan. Accordingly,

---

3 A monitor is an independent third party who is appointed by the court to, among other things, monitor the company's ongoing operations. The monitor's duties include, monitoring the business and reporting to the court on any major events that might impact the viability of the company. The monitor will also prepare a report on any sale transaction involving an insolvent debtor's assets conducted out of the ordinary course and on any plan of arrangement advising the court on the reasonableness of such step.

since then, Canadian courts have come to accept that the business and assets of an insolvent company can be sold under the CCAA free and clear of any lien, security, charge, or other restriction, without the need to file a CCAA plan. The CCAA now allows a debtor to dispose of all or substantially all of its assets outside of the ordinary course of business without the formal approval of its creditors, provided it obtains prior authorization from the court. In deciding whether to authorize the proposed sale of assets, the CCAA stipulates that the CCAA court is to consider, among other things:

a. whether the process leading to the proposed sale or disposition was reasonable under the circumstances;

b. whether the CCAA monitor has approved the process leading to the proposed sale or disposition;

c. whether the CCAA monitor filed with the CCAA court a report stating that in its opinion, the sale or disposition would be more beneficial to the creditors than a sale or disposition under a bankruptcy;

d. the extent to which the creditors were consulted;

e. the effects of the proposed sale or disposition on the creditors and other interested parties; and

f. whether the consideration to be received for the assets is reasonable and fair, taking into account their market value.

8. These criteria are largely based on the principles which were previously enunciated by the Ontario Court of Appeal in the *Soundair* matter,[4] in which the court listed the following non-exhaustive criteria to examine in order to determine whether a sale of assets of an insolvent debtor should be approved:

a. whether sufficient effort has been made to obtain the best price and that the debtor has not acted improvidently;

b. the interests of all parties;

[4] *Royal Bank of Canada v. Soundair Corp.* (1991), 4 O.R. (3d) 1 (C.A.).

c. the efficacy and integrity of the process by which offers have been obtained; and

d. whether there has been unfairness in the working out of the process.

9. If the required test is met, the court will typically issue an approval and vesting order authorizing the transfer of the assets on a free and clear basis (other than assumed/permitted encumbrances). The order will also provide that creditor claims will have the same priority against the proceeds of the transaction that they had against the assets, prior to the sale.

10. It should be noted that court authorization will be granted only if the CCAA court is satisfied that the company can and will pay for any unpaid wages or pension plan contributions that would have been required if the court had approved a proposal or a plan of arrangement and compromise, as applicable. It should also be noted that if the sale transaction ultimately presented to the court for approval is with a related party, certain additional requirements must be met.

11. While, as mentioned, the sale of assets of a debtor company does not require the formal approval of its creditors, the CCAA requires that a notice of motion to the CCAA court for the approval of the sale or disposition of assets be given by the debtor to all of its secured creditors who are likely to be affected by the proposed sale or disposition. Likewise, and as discussed below, the Debtors intend to seek CCAA court approval of the procedures that will govern the Sale Process (as defined below).

12. In a CCAA proceeding, a debtor is able to obtain postpetition financing (*i.e.*, DIP financing), subject to a hearing and court approval, after showing that the proposed financing is in the best interests of the debtor. *See* CCAA at 11.2. Such borrowings would typically have priority status in the CCAA proceeding and, if unsecured financing is unavailable, the debtor is permitted to borrow on a secured basis. *See* CCAA at 11(2). Debtors have been able to obtain court approval of such postpetition financing on the basis of a term sheet. *See, e.g., U.S. Steel Canada Inc., Re*,

2014 ONSC 6145 (¶¶ 4 and 18); *In the Matter of a Plan of Arrangement of the UrtheCast Corp.*, 2020 BCSC 2012 (¶ 25). The court may approve priority charges against the company's assets in respect of such financing, which may take priority over existing secured creditors, where notice of the charge approval hearing is given to the potentially affected creditors and the court is of the opinion that such charges are appropriate in the circumstances. *See* CCAA at 11.2(1).

**B. Commencement and Overview of CCAA Restructuring Proceedings**

13. On May 15, 2025, the Debtors commenced the CCAA Proceedings with the Canadian Court pursuant to the CCAA with the goal of conducting the Sale Process and restructuring operations under the protections offered by the CCAA. On May 15, 2025, the Canadian Court entered an initial order (the "Initial CCAA Order"). The Initial CCAA Order, attached to the Provisional Relief Motion as Exhibit 1, includes a "no default" provision. More specifically paragraph 13 of the Initial CCAA Order provides as follows:

> **THIS COURT ORDERS** that during the Stay Period, no Person shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, rescind, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence, authorization or permit in favour of or held by any of the STS Entities, except with the written consent of the applicable STS Entities and the Monitor, or leave of this Court.[5]

14. In addition, the Initial CCAA Order expressly requests that courts in the United States recognize the CCAA Proceedings to aid and assist the Canadian Court in carrying out the terms of the Initial CCAA Order:

> **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign

[5] Initial CCAA Order, ¶ 13.

proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

**THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.[6]

15. The Debtors will seek entry by the Canadian Court of the Amended and Restated Initial CCAA Order within ten days from the date of entry of the Initial CCAA Order.

16. I believe recognition of the CCAA Proceedings will not undermine the rights that United States creditors typically enjoy in a chapter 11 proceeding, as affected creditors will have the opportunity to the participate in the CCAA Proceedings under the supervision of the Canadian Court.

**C. Initial Relief Sought in CCAA Restructuring Process**

17. The Debtors sought the following relief through their initial application in the CCAA Proceeding:

a. ***Appointment of Monitor.*** The Debtors obtained approval of PricewaterhouseCoopers Inc., LIT as Monitor in the CCAA Proceedings.
b. ***Stay of Proceedings.*** The Debtors obtained a stay of proceedings during the pendency of the CCAA Proceedings both for themselves and for the Non-Applicant Stay Parties.
c. ***Ability to Pay Pre-Filing Amounts.*** The Debtors obtained authorization (but not the obligation) to pay certain pre-filing amounts, including wages and amounts owing for certain goods and services with the consent of the Monitor and BNS.
d. ***Administration Charge.*** The Debtors obtained approval of a priority charge over their assets in favor of their counsel, the Monitor, and the Monitor's counsel (the "Administration Charge") in the initial amount of CAD$1,000,000 as the Debtors require the expertise, knowledge, and continuing participation of their counsel, the Monitor, and the Monitor's counsel in the CCAA Proceedings and these Chapter 15 Cases.
e. ***Directors' Charge.*** The Debtors obtained approval of a priority charge over their assets (the "Directors' Charge") in the initial amount of CAD$1,100,000 to

[6] *Id.* at ¶¶ 44 – 45.

secure the indemnity of the Directors and Officers in respect of obligations and liabilities that they may incur during the CCAA Proceedings in their capacities as Directors and Officers.

**D. Relief to be Sought at Comeback Hearing**

18. My understanding is that the Debtors currently intend to seek the following relief at the Comeback Hearing:

a. ***Stay Extension***. The Debtors will seek the extension of the stay of proceedings granted in the Initial CCAA Order.
b. ***Approval of DIP Facility***. The Debtors will seek the approval to borrow under a debtor-in-possession credit facility (the "DIP Facility") that is currently being negotiated with BNS to finance the Company's critically required working capital requirements and other general corporate purposes.
c. ***Increases to Existing Charges***. The Debtors will seek to increase the amount of the Administration Charge and Directors' Charge and will seek to grant a DIP Lender's Charge.
d. ***Key Employee Retention Plan.*** The Debtors will seek approval of key employee retention plan and a related charge.

19. In addition, at the Comeback Hearing, the Debtors anticipate seeking an order (the "Sale Process Order") in furtherance of the Sale Process, which would, among other things, approve a sale and investment solicitation process (the "Sale Process") in respect of the Debtors and authorize the Debtors and the Monitor to implement the Sale Process pursuant to its terms.

**II. THE CCAA PROCEEDINGS ARE FOREIGN MAIN PROCEEDINGS.**

20. To ensure the effective and economic administration of the Debtors' restructuring efforts, I believe that the Debtors require the protection afforded to foreign debtors pursuant to chapter 15 of the Bankruptcy Code in order to prevent disruption of business and recognize the legal effect of the CCAA Proceedings in the United States.

21. To the best of my information and belief, the CCAA Proceedings are collective judicial proceedings under Canadian law relating to the adjustment of debt of the Debtors in which the purpose is a corporate restructuring.

22. To the best of my information and belief, and as identified in the Tokarik

Declaration filed contemporaneously herewith, other than these Chapter 15 Cases, the CCAA Proceedings are the only proceedings related to the adjustment of debts pending for the Debtors and, therefore, are the only "foreign proceedings" with respect to the Debtors within the meaning of section 101(23) of the Bankruptcy Code.

23. Additionally, I understand that a statement identifying all foreign proceedings with respect to the Debtors has been filed with this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my information and belief.

Executed on this 15th day of May, 2025 in Toronto, Ontario, Canada

*/s/ Sean Zweig*
Sean Zweig
Partner
Bennett Jones LLP