# EXHIBIT 1

**Reverse Vesting Order**

Court File No. CV-25-00743275-00CL

## ONTARIO
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEDNESDAY, THE 15TH |
| | ) | |
| JUSTICE STEELE | ) | DAY OF OCTOBER, 2025 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF STS RENEWABLES LTD., EARTH DRILLING CO. LTD., ON TRACK DRILLING INC., STS RENEWABLES EARTH USA ACQUISITION CO. LTD., EARTH DRILLING CO. LTD., HARRIS EXPLORATION DRILLING & ASSOCIATES, INC., SUBTERRA CAPITAL PARTNERS INC., SUBTERRA DEVELOPMENT LTD., AND SUBTERRA CAPITAL PARTNERS US INC.

Applicants

## ORDER
### (APPROVAL AND REVERSE VESTING ORDER)

**THIS MOTION**, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") for an order, among other things: (a) approving the purchase and sale, issuance and subscription, and all related steps (the "**Transaction**") contemplated in the Agreement of Purchase and Sale and Subscription Agreement (the "**Agreement**") dated effective as of September 19, 2025 by and between (i) 2734655 Alberta Ltd., as purchaser (the "**Purchaser**"), (ii) STS Renewables Ltd., as vendor ("**STS**"), and (iii) Earth Drilling Co. Ltd., On Track Drilling Inc., STS Renewables Earth USA Acquisition Co. Ltd., Earth Drilling Co. Ltd., and Harris Exploration Drilling & Associates, Inc. (collectively, the "**Subsidiaries**", and each, a "**Subsidiary**", and together with STS, the "**STS Entities**"), a copy of which is attached as Exhibit "D" to the affidavit of Matthew Tokarik sworn October 6, 2025 (together with the exhibits thereto, the "**Tokarik Affidavit**"); and (b) approving all such other reorganization transactions contemplated in Article 2 of the Agreement (the "**Reorganization**") and forming part of this Order (such transactions contemplated in the Reorganization, along with

the Closing Sequence described at Section 9.2 of the Agreement being collectively referred to as the "**Restructuring Steps**"), was heard this day by judicial teleconference via Zoom.

**ON READING** the Tokarik Affidavit, the Fifth Report of PricewaterhouseCoopers Inc., in its capacity as the Court-appointed monitor (the "**Monitor**"), filed (the "**Fifth Report**"), and on hearing the submissions of counsel for the Applicants, counsel for the Monitor, counsel for the Purchaser, counsel for the Bank of Nova Scotia, and counsel for those other parties appearing as indicated on the counsel slip, and no one else appearing for any other person on the service list, although duly served as appears from the affidavit of service, filed:

**SERVICE AND DEFINITIONS**

1. **THIS COURT ORDERS** that the time for service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2. **THIS COURT ORDERS** that, unless otherwise indicated or defined herein, capitalized terms used in this Order shall have the meanings given to them in the Agreement or the Tokarik Affidavit.

**APPROVAL AND VESTING**

3. **THIS COURT ORDERS** that the Agreement and the Transaction are hereby approved and the entering into and execution of the Agreement by the STS Entities and the completion of the Transaction is hereby authorized and approved, *nunc pro tunc*, with such minor alterations, changes, amendments, deletions, or additions thereto, as may be agreed to by the STS Entities and the Purchaser and consented to by the Monitor and the DIP Lender.

4. **THIS COURT ORDERS** that the STS Entities and their successors (including 1001374205 Ontario Inc., incorporated pursuant to the Restructuring Steps and defined as "**ResidualCo**") are hereby authorized and directed to implement and complete the Transaction and the Restructuring Steps in the sequence provided for in the Agreement, with such minor alterations, changes, amendments, deletions, or additions thereto, as may be agreed to by the STS Entities and the Purchaser and consented to by the Monitor and the DIP Lender.

5. **THIS COURT ORDERS** that the STS Entities and their successors are hereby authorized to:

   (a) execute and deliver any documents and assurances governing or giving effect to the Restructuring Steps as the STS Entities, the Purchaser, the Monitor, or the DIP Lender, in their respective discretion, may deem to be reasonably necessary or advisable to conclude the Restructuring Steps, including the execution of such deeds, contracts or documents, as may be contemplated in the Reorganization and all such deeds, contracts, or documents are hereby ratified, approved, and confirmed; and

   (b) take such steps as are deemed necessary or incidental to the implementation of the Restructuring Steps.

6. **THIS COURT ORDERS AND DECLARES** that this Order shall constitute the only authorization required by the STS Entities and their successors to proceed with the Transaction and the Restructuring Steps and that no director, shareholder, contractual, or regulatory approval shall be required in connection with any of the steps contemplated pursuant to the Transaction or the Restructuring Steps.

7. **THIS COURT ORDERS** that the STS Entities are hereby authorized to perform all acts, sign all documents, and take any necessary action to execute any agreement, contract, deed, provision, transaction, or undertaking stipulated in the Agreement, with such minor alterations, changes, amendments, deletions, or additions thereto, as may be agreed to by the STS Entities and the Purchaser and consented to by the Monitor and the DIP Lender and any other ancillary document that could be required or useful to give full and complete effect thereto and to implement the Transaction and the Restructuring Steps.

8. **THIS COURT ORDERS** that, upon the delivery of a Monitor's certificate substantially in the form appended as Schedule A hereto (the "**Monitor's Certificate**") to the STS Entities and the Purchaser (the "**Effective Time**"), the following shall occur and shall be deemed to have occurred at the Effective Time in the following sequence:

(a) first, the Subsidiaries shall hold the Retained Assets free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts, reservations of ownership, pledge, deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured, or otherwise (collectively, the "**Claims**") including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by order of this Court; and (ii) all charges, security interests, or claims evidenced by registrations pursuant to the *Personal Property Security Act*, R.S.O. 1990, c. P.10, or any other personal property registry system (all of which are collectively referred to as the "**Encumbrances**") and, for greater certainty, this Court orders that all of the Encumbrances affecting or relating to the Retained Assets are hereby expunged and discharged as against the Retained Assets;

(b) second, all of the Subsidiaries' right, title and interest in and to the Excluded Assets shall vest absolutely and exclusively in ResidualCo, and all Claims and Encumbrances shall continue to attach to such Excluded Assets with the same nature and priority as they had immediately prior to transfer;

(c) third, all debts, liabilities, taxes, obligations, indebtedness, Excluded Contracts, leases, agreements, and undertakings of any kind or nature whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) of the Subsidiaries and their predecessors, whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise (collectively, "**Obligations**") other than the Retained Liabilities (all such Obligations that are not expressly identified in the Agreement as being Retained Liabilities being referred to as the "**Excluded Liabilities**") shall be transferred to, assumed by, and vest absolutely and exclusively in, ResidualCo with the same

attributes and rights resulting from existing defaults of the Subsidiaries and their predecessors, such that, at the times provided for in the Restructuring Steps and before the Closing Date, the Excluded Liabilities shall be novated in each case and become obligations of ResidualCo and not obligations of the Subsidiaries, and the Subsidiaries shall be forever released and discharged from such Excluded Liabilities, and all Encumbrances securing Excluded Liabilities shall be forever released and discharged;

(d) fourth, all Existing Shares and any options, conversion privileges, equity-based awards, warrants, securities, debentures, loans, notes or other rights, agreements or commitments of any character whatsoever that are held by any Person (as defined below) and are convertible or exchangeable for any securities of the Subsidiaries which require the issuance, sale or transfer by the Subsidiaries, of any shares or other securities of the Subsidiaries, or otherwise evidencing a right to acquire the Subsidiaries, or otherwise relating thereto, shall be deemed terminated and cancelled;

(e) fifth, in consideration for the Purchase Price, STS Renewables Earth USA Acquisition Co. Ltd. and Earth Drilling Co. Ltd. shall issue the Subscribed Shares to the Purchaser in accordance with the Agreement, and all of the right, title and interest in and to the Subscribed Shares issued by the STS Renewables Earth USA Acquisition Co. Ltd. and Earth Drilling Co. Ltd. shall vest absolutely in the Purchaser, free and clear of and from any and all Claims and, for greater certainty, any Encumbrances affecting or relating to the Subscribed Shares are hereby expunged and discharged as against the Subscribed Shares; and

(f) sixth, the Subsidiaries shall and shall be deemed to cease to be Applicants in these CCAA Proceedings, and the Subsidiaries shall be deemed to be released from the purview of the Initial Order and all other Orders of this Court granted in respect of these CCAA Proceedings, save and except for this Order, the provisions of which (as they relate to the STS Entities) shall continue to apply in all respects.

9. **THIS COURT ORDERS** the Monitor to file with the Court a copy of the Monitor's Certificate as soon as practicable after the issuance thereof.

10. **THIS COURT ORDERS** that upon the issuance of the Monitor's Certificate, the Purchaser shall be authorized to take all such steps as may be necessary to effect the discharge of all Encumbrances, including filing such financing change statements in the Ontario Personal Property Registry and any related registries as may be necessary, from any registration filed against the Retained Assets.

11. **THIS COURT ORDERS** that, pursuant to clause 7(3) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c. 5, as amended, each of the STS Entities, or the Monitor, as the case may be, is authorized, permitted, and directed to, on the Closing Date, disclose to the Purchaser, all human resources and payroll information in the Subsidiaries' records pertaining to past and current employees of the Subsidiaries. The Purchaser shall maintain and protect the privacy of such information in accordance with applicable law and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Subsidiaries prior to the Closing Date.

12. **THIS COURT ORDERS** that, at the Effective Time and without limiting the provisions of paragraph 8 of this Order, the Purchaser and the Subsidiaries shall be deemed released from any and all claims, liabilities (direct, indirect, absolute or contingent) or obligations with respect to any Taxes (including penalties and interest thereon) of, or that relate to, the Applicants (provided that, such release shall not apply to: (i) Taxes in respect of the business and operations conducted by any of the Subsidiaries after the Closing Time; or (ii) Taxes expressly assumed pursuant to the Agreement).

13. **THIS COURT ORDERS** that except to the extent expressly contemplated by the Agreement (and, for greater certainty, excluding the Excluded Contracts, the Excluded Assets, and the Excluded Liabilities and any contracts relating thereto), all Retained Contracts to which the Subsidiaries are a party at the time of delivery of the Monitor's Certificate will be and remain in full force and effect upon and following delivery of the Monitor's Certificate and no individual, partnership, limited partnership, limited liability company, joint venture, syndicate, sole proprietorship, company or corporation with or without share capital, unincorporated association,

trust, trustee, executor, administrator or other legal personal representative, Governmental Authority or other entity however designated or constituted (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") who is a party to any such arrangement may accelerate, terminate, rescind, refuse to perform, or otherwise repudiate its obligations thereunder, or enforce or exercise any right (including any right of set off, dilution, or other remedy) or make any demand under or in respect of any such arrangement and no automatic termination will have any validity or effect, by reason of:

(a) any event that occurred on or prior to the Closing Date and is not continuing that would have entitled such Person to enforce those rights or remedies (including defaults or events of default arising as a result of the insolvency of the Subsidiaries);

(b) the insolvency of the STS Entities or the fact that the STS Entities obtained relief under the CCAA;

(c) any compromises, releases, discharges, cancellations, transactions, arrangements, reorganizations, or other steps taken or effected pursuant to the Agreement, the Transaction, the Restructuring Steps, the provisions of this Order, or any other Order of this Court in these CCAA Proceedings; or

(d) any transfer or assignment, or any change of control, of the Subsidiaries or their property arising from the implementation of the Agreement, the Transaction, the Restructuring Steps, or the provisions of this Order.

14. **THIS COURT ORDERS**, for greater certainty, that (a) nothing in paragraph 13 hereof shall waive, compromise, or discharge any obligations of the Subsidiaries or the Purchaser, in respect of any Retained Liabilities, (b) the designation of any Claim as a Retained Liability is without prejudice to the Subsidiaries' or the Purchaser's right to dispute the existence, validity or quantum of any such Retained Liability, and (c) nothing in this Order or the Agreement shall affect or waive the Subsidiaries' or the Purchaser's rights and defences, both legal and equitable, with respect to any Retained Liability, including, but not limited to, all rights with respect to entitlements to set-offs or recoupments against such Retained Liability.

15.     **THIS COURT ORDERS** that upon the issuance of the Monitor's Certificate, all Persons shall be deemed to have waived any and all defaults of the Subsidiaries then existing or previously committed by the Subsidiaries or caused by the Subsidiaries, directly or indirectly, or non-compliance with any covenant, positive or negative pledge, warranty, representation, term, provision, condition or obligation, express or implied, in any contract, credit document, or other agreement existing between such Person and a Subsidiary arising from the insolvency of any STS Entities, the filing of an application under the CCAA, or the completion of the Transaction or the Restructuring Steps, and any and all notices of default and demands for payment under any instrument, including any guarantee arising from such default, shall be deemed to have been rescinded.

16.     **THIS COURT ORDERS** that from and after the Effective Time, any and all Persons shall be and are hereby forever barred, estopped, stayed and enjoined from commencing, taking, applying for or issuing or continuing any and all steps or proceedings, whether directly, derivatively or otherwise, and including without limitation, administrative hearings and orders, declarations and assessment, commenced, taken or proceeded with or that may be commenced, taken or proceeded with against the Subsidiaries or their property relating in any way to or in respect of any Excluded Assets or Excluded Liabilities and any other claims, obligations and other matters which are waived, released, expunged or discharged pursuant to this Order.

17.     **THIS COURT ORDERS** that from and after the Effective Time:

  (a)    the Retained Liabilities including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of the Agreement or the steps and actions taken in accordance with the terms thereof;

  (b)    the nature and attributes (including rights resulting from existing defaults of the Subsidiaries and their predecessors) of the Excluded Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of their transfer to and assumption by ResidualCo; and

  (c)    any Person that, prior to the Closing Date, had a valid Claim against the Subsidiaries (including any predecessor corporation) in respect of the Excluded

Liabilities shall no longer have such Claim against the Subsidiaries (including any successor corporation), but will have an equivalent Claim against ResidualCo in respect of the Excluded Liabilities from and after the Closing Date in its place and stead, with the same attributes and rights resulting from existing defaults of the Subsidiaries and their predecessors and, nothing in this Order limits, lessens, modifies (other than by change of debtor), or extinguishes the Excluded Liabilities or the Claim of any Person as against ResidualCo which shall be the sole and exclusive debtor of the Claim.

18. **THIS COURT ORDERS** that:

    (a) ResidualCo is a company to which the CCAA applies;

    (b) ResidualCo shall be added as an Applicant in these CCAA Proceedings and any reference in any Order of this Court in respect of these CCAA Proceedings to an "Applicant" or the "Applicants" shall also refer to ResidualCo, *mutadis mutandis*, and, for greater certainty, each of the Charges (as such term is defined in the Initial Order, as extended, amended, and restated since) shall also constitute a charge on the property of ResidualCo; and

    (c) the style of cause in these CCAA proceedings shall be amended to add ResidualCo as an Applicant.

19. **THIS COURT ORDERS** that, notwithstanding:

    (a) the pendency of these proceedings;

    (b) any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3 (the "**BIA**") in respect of the Applicants and any bankruptcy order issued pursuant to any such applications; and

    (c) any assignment in bankruptcy made in respect of the Applicants or ResidualCo,

the implementation of the Transaction and the Restructuring Steps, including the transfer of the Excluded Assets, Excluded Liabilities, and Excluded Contracts to ResidualCo and the

implementation of the Transaction under and pursuant to the Agreement (i) shall be binding on any trustee in bankruptcy that may be appointed in respect of the Applicants or ResidualCo, and shall not be void or voidable by creditors of the Applicants or ResidualCo, (ii) shall not constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the BIA or any other applicable federal, provincial, or territorial legislation, and (iii) shall not constitute nor be deemed to be oppressive or unfairly prejudicial conduct by the Applicants, the Released Parties (as defined below), or the Purchaser pursuant to any applicable federal, provincial, or territorial legislation.

**RELEASES**

20. **THIS COURT ORDERS** that effective upon the issuance of the Monitor's Certificate, each of (a) the current and former directors, officers, employees, consultants, legal counsel and advisors of the Subsidiaries; (b) the current directors, officers, employees, consultants legal counsel and advisors to ResidualCo; (c) the Monitor and its legal counsel and their respective current and former directors, officers, partners, employees, consultants and advisors; and (d) the DIP Lender, its affiliates, and their respective current and former directors, officers, employees, agents, legal counsel and advisors (the Persons listed in (a), (b), (c) and (d) being collectively, the "**Released Parties**") shall be deemed to be forever and irrevocably released and discharged from any and all present and future liabilities, claims (including, without limitation, breach of trust claims or claims for contribution or indemnity), indebtedness, demands, actions, causes of action, counterclaims, suits, damages, judgments, executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, duties, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) based in whole or in part on any act or omission, transaction, offer, dealing, or other fact, matter, occurrence or thing existing or taking place prior to the delivery of the Monitor's Certificate, or arising in connection with or relating to the CCAA Proceedings, the Agreement, the consummation of the Transaction, any closing document, agreement, document, instrument, matter or transaction involving the Subsidiaries arising in connection with or pursuant to any of the foregoing (collectively, the "**Released Claims**"), which Released Claims are hereby and shall be deemed to be fully, finally, irrevocably and forever

waived, discharged, released, cancelled and barred as against the Released Parties, and are not vested nor transferred to ResidualCo or to any other entity and are extinguished, provided that nothing in this paragraph shall waive, discharge, release, cancel or bar (i) any claim that either the Bank of Nova Scotia or 1941529 Alberta Ltd. may have against Robert Corey Hawtin or Lucie Andlauer, or any other individual that granted an undertaking to inject funds or guarantee in favour of The Bank of Nova Scotia in relation to indebtedness of the STS Entities (or any one or more of them) to The Bank of Nova Scotia; (ii) any claim with respect to an act or omission that is determined by a court of competent jurisdiction to have constituted actual fraud or wilful misconduct, (iii) any claim against ResidualCo in respect of the Excluded Liabilities transferred pursuant to the Closing; (iv) any claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA; or (v) any post-closing obligations of any of the Released Parties under or pursuant to the Agreement or the Transaction and/or any agreement, document, instrument, matter or transaction involving the STS Entities entered into pursuant to the Agreement or Transaction.

21.     **THIS COURT ORDERS** that, effective upon the filing of the Monitor's Certificate, the Purchaser shall be deemed to be forever irrevocably released and discharged from any and all present and future liabilities, claims (including, without limitation, claims for contribution or indemnity), indebtedness, demands, actions, causes of action, counterclaims, suits, damages, judgments, executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, or due or not yet due, in law or equity and whether based in statute or otherwise) based in whole or in part on any act or omission, transaction, dealing, or other occurrence existing or taking place prior to the filing of the Monitor's Certificate, undertaken or completed in connection with or pursuant to the terms of this Order and that relate in any manner whatsoever to the Agreement, the debt owing to the DIP Lender under the DIP Agreement, the consummation of the Transaction or Restructuring Steps, and/or any closing document, agreement, document, instrument, matter or transaction involving the Subsidiaries arising in connection with or pursuant to any of the foregoing, which are hereby and shall be deemed to be fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Purchaser.

**GENERAL**

22.     **THIS COURT ORDERS** that the Purchaser shall be authorized to take all steps as may be necessary to effect the discharge of the Encumbrances as against the assets of the Subsidiaries.

23.     **THIS COURT ORDERS** that, as of the Closing Time, the title of these CCAA Proceedings is hereby changed to:

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF STS RENEWABLES LTD., SUBTERRA CAPITAL PARTNERS INC., SUBTERRA DEVELOPMENT LTD., SUBTERRA CAPITAL PARTNERS US INC., AND 1001374205 ONTARIO INC.

24.     **THIS COURT ORDERS** that the Applicants and the Monitor shall be authorized to apply as they may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada or the United States to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

25.     **THE COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States to give effect to this Order. All courts, tribunals, regulatory and administrative bodies are hereby

respectfully requested to make such orders and to provide such assistance, as may be necessary or desirable to give effect to this Order or to assist the parties in carrying out the terms of this Order.

26. **THIS COURT ORDERS** that this Order shall have full force and effect in all provinces and territories in Canada.

27. **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. (Eastern Time) on the date of this Order without the need for entry or filing,

_____

# SCHEDULE A

## FORM OF MONITOR'S CERTIFICATE

Court File No. CV-25-00743275-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF STS RENEWABLES LTD., EARTH DRILLING CO. LTD., ON TRACK DRILLING INC., STS RENEWABLES EARTH USA ACQUISITION CO. LTD., EARTH DRILLING CO. LTD., HARRIS EXPLORATION DRILLING & ASSOCIATES, INC., SUBTERRA CAPITAL PARTNERS INC., SUBTERRA DEVELOPMENT LTD., AND SUBTERRA CAPITAL PARTNERS US INC.

Applicants

## MONITOR'S CERTIFICATE

**RECITALS**

A. Pursuant to the Initial Order of the Honourable Justice Osborne of the Ontario Superior Court of Justice (Commercial List), (the "**Court**") dated May 15, 2025, as amended and restated on May 23, 2025, the Applicants were granted protection from their creditors pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, and PricewaterhouseCoopers Inc., LIT was appointed as the monitor of the Applicants (in such capacity, the "**Monitor**").

B. Capitalized terms not otherwise defined herein shall have the meanings given to them in the Approval and Reverse Vesting Order of this Court dated October 15, 2025 (the "**ARVO**").

C. Pursuant to the ARVO, the Court approved the Transaction contemplated by the Agreement and ordered, *inter alia*, that: (i) all of the Subsidiaries' right, title, and interest in and to the Excluded Assets shall vest absolutely and exclusively in ResidualCo; (ii) all of the Excluded Liabilities shall be transferred to, assumed by and vest in ResidualCo; and (iii) all of the right, title

and interest in and to the Subscribed Shares, shall vest absolutely and exclusively in and with the Purchaser, free and clear of and from any and all Claims and Encumbrances, to be effective upon the issuance of a certificate by the Monitor to the Purchaser and the Applicants confirming that the Monitor has received written confirmation in the form and substance satisfactory to the Monitor from the STS Entities and the Purchaser that all conditions of Closing have been satisfied or waived by the parties to the Agreement.

**THE MONITOR CERTIFIES** the following:

1. The Monitor has received the Purchase Price.

2. The Monitor has received written confirmation from the STS Entities and the Purchaser, in form and substance satisfactory to the Monitor, that all conditions to Closing have been satisfied or waived, as applicable, by the parties to the Agreement.

3. This Monitor's closing certificate was delivered by the Monitor at Toronto on _____, 2025.

**PricewaterhouseCoopers Inc., in its capacity as the Monitor of Applicants and not in its personal or corporate capacity**

Per: _____
Name:
Title:

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36*, AS AMENDED

AND IN THE MATTER OF STS RENEWABLES LTD., EARTH DRILLING CO. LTD., ON TRACK DRILLING INC., STS RENEWABLES EARTH USA ACQUISITION CO. LTD., EARTH DRILLING CO. LTD., HARRIS EXPLORATION DRILLING & ASSOCIATES, INC., SUBTERRA CAPITAL PARTNERS INC., SUBTERRA DEVELOPMENT LTD., AND SUBTERRA CAPITAL PARTNERS US INC.

Court File No.: CV-25-00743275-00CL

**ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**
Proceedings Commenced in Toronto

**APPROVAL AND REVERSE VESTING ORDER
(October 15, 2025)**

**BENNETT JONES LLP**
One First Canadian Place
Suite 3400, P.O. Box 130
Toronto, Ontario
M5X 1A4

**Sean Zweig (LSO# 573071)**
Tel: (416) 777-6254
Email: ZweigS@bennettjones.com

**Mike Shakra (LSO# 64604K)**
Tel: (416) 777-3236
Email: ShakraM@bennettjones.com

**Thomas Gray (LSO# 82473H)**
Tel: (416) 777-7924
Email: GrayT@bennettjones.com

**Linda Fraser-Richardson (LSO# 89718B)**
Tel: (416) 777-7869
Email: FraserRichardsonL@bennettjones.com

Lawyers for the Applicants