# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| STS RENEWABLES LTD., et al.,[1] | Case No. 25-10884 (KBO) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |

**Hearing Date: January 8, 2026 @ 10:30 a.m. (ET)**
**Objection Deadline: December 31, 2025 @ 4:00 p.m. (ET)**

## FOREIGN REPRESENTATIVE'S MOTION FOR ENTRY OF ORDER (I) RECOGNIZING AND ENFORCING DISTRIBUTION ORDER AND ANCILLARY ORDER; (II) APPROVING THE PROCEDURE GOVERNING CLOSING OF CHAPTER 15 CASES; AND (III) GRANTING RELATED RELIEF

STS Renewables Ltd. ("STS"), in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors"), which are the subject of jointly-administered proceedings (the "Canadian Proceedings") under the Companies' Creditors Arrangement Act,[2] in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), submits this motion (the "Motion"), pursuant to sections 105(a) 363, 1501, 1507, 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 5009, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 5009-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the United States Bankruptcy Court for the District of Delaware (the "Court"), seeking

---

[1] The Debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with the last four digits of each Debtor's unique identifier, are: STS Renewables Ltd. (6458); 10531618 Canada Inc., f/k/a Subterra Capital Partners Inc. (1618); 14878868 Canada Ltd., f/k/a Subterra Development Ltd. (8868); 2425036 Inc., f/k/a Subterra Capital Partners US Inc. (0344); and 1001374205 Ontario Inc. Former Debtors Earth Drilling Co. Ltd. (2067); On Track Drilling Inc. (0775); Earth Drilling Co. Ltd. (5471); STS Renewables Earth USA Acquisition Co. Ltd. (9095); and Harris Exploration Drilling & Associates Inc. (9416) ceased to be foreign Debtors following the closing of the approved sales described herein. The Debtors' service address for purposes of these Chapter 15 Cases is 3400 One First Canadian Place, P.O. Box 130, Toronto, ON, M5X 1A4.

[2] R.S.C. 1985, c. C-36 (as amended, the "CCAA").

entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) recognizing and enforcing the Distribution Order and Ancillary Order (both as defined below) entered by the Canadian Court, (ii) approving the procedure governing closing of these chapter 15 cases (the "Chapter 15 Cases") and (iii) granting related relief. In support of the relief requested herein, the Foreign Representative respectfully represents as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. The Foreign Representative confirms its consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P). Venue of these Chapter 15 Cases are proper in this Court pursuant to 28 U.S.C. § 1410.

3. The statutory bases for the relief requested herein are sections 105(a), 350, 1507, 1517(d), 1520 and 1521 of the Bankruptcy Code, Bankruptcy Rule 5009, and Local Rule 5009-2.

## BACKGROUND

4. On May 15, 2025, the Debtors commenced the Canadian Proceedings with the Canadian Court pursuant to the CCAA with the goal of pursuing a sale process under the supervision of the Canadian Court.

5.     The key orders entered in the Canadian Proceedings to date include the following: (a) *Initial Order*, entered on May 15, 2025 (the "Initial CCAA Order"); (b) *Amended and Restated Initial Order*, entered on May 25, 2025 (the "Amended Initial CCAA Order"); (c) *SISP Approval Order* (the "SISP Order"), entered on May 23, 2025, governing a sale and investment solicitation process, and (d) on October 21, 2025, three orders approving the sale of substantially all of the Canadian Debtors' assets (collectively, the "Canadian Sale Orders"). The stay of proceedings granted under the Initial Order has continued to be extended by Orders granted by the Canadian Court.

6.     On May 15, 2025, (the "Petition Date"), the Foreign Representative filed voluntary petitions for relief under chapter 15 of the Bankruptcy Code for each of the Debtors in this Court. A description of the Debtors' business and the events leading up to the commencement of the Canadian Proceedings and these Chapter 15 Cases is included in the *Declaration of the Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Verified Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 7] and the *Declaration of Sean Zwieg in Support of Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 6], which are incorporated herein by reference.

7.     On June 10, 2025, this Court entered the *Order Granting Verified Petition for (I) Recognition as Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy* [Docket No. 27] (the "Recognition

Order"). The Recognition Order gave full force and effect to the Initial CCAA Order and the Amended Initial CCAA Order.

8.     The SISP provided for the Debtors and PricewaterhouseCoopers Inc., in its capacity as monitor (the "Monitor") of the Debtors, to implement the SISP and for the Monitor to lead a two-phase process to canvass the market for a value maximizing transaction or transactions.  At the conclusion of the SISP, the Debtors entered into purchase agreements for the sale of certain of their assets which were approved by the Canadian Court (collectively, the "Sales"). On October 28, this Court entered an order recognizing and enforcing two of the Canadian Sale Orders [Docket No. 46] (the "Sale Recognition Order").[3]

9.     The Debtors closed the Sales approved pursuant to the Canadian Sale Orders effective as of October 31, 2025.  The Sales, in accordance with the terms and conditions of the Canadian Sale Orders, represented the culmination of the orderly sale process authorized by the Canadian Court. Following the closing of the Sales, the Debtors have no material remaining business or assets (other than the "Disputed Assets" discussed below) and no remaining employees.

**The Distribution Order**

10.     On November 26, 2025, the Canadian Court entered its *Order (Distribution Approval)* (the "Distribution Order").  A true and correct copy of the Distribution Order is attached to the Proposed Order as Exhibit 1.

11.     The Distribution Order authorizes and directs the Monitor to make distributions ("Distributions") from time-to-time to: (i) The Bank of Nova Scotia ("BNS") from the net cash proceeds of the Sales; and (ii) BNS and/or Transpecos Banks, SSB ("Transpecos"),

---

[3] The Foreign Representative did not seek recognition of the third Canadian Sale Order.

as applicable, from the net cash proceeds from the monetization of the "Disputed Assets", if any, as consented to by BNS and Transpecos, or in accordance with a further Order of the Canadian Court. Such Distributions are free and clear of any and all encumbrances.

12. The Distribution Order also includes a request for this Court's "aid and recognition" in giving effect to the Distribution Order.[4]

> **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, and, regulatory or administrative bodies, having jurisdiction in Canada or in any other foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor, and their respective agents in carrying out the terms of this Order. All courts, tribunals and, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

**The Ancillary Order**

13. On November 26, 2025, the Canadian Court entered its *Order (CCAA Termination and Ancillary Matters* (the "Ancillary Order"). A copy of the Ancillary Order is attached to the Proposed Order as Exhibit 2. The Ancillary Order provides, among other things, that the Monitor shall have the enhanced power and authority to take any and all actions and steps in the name of and on behalf of the Debtors to facilitate the administration and wind-down of the Debtors' remaining business, property, operations, affairs and estates as may be necessary, appropriate, or desirable, in the sole discretion of the Monitor.

14. The Ancillary Order further provides that the Monitor is authorized and empowered, but not required, to operate and control, all of the Debtors' existing banks accounts

---

[4] Distribution Order at ¶ 9.

in such manner as the Monitor, in its sole discretion, deems necessary or appropriate, including without limitation, to effectuate the Distributions authorized by and in the Distribution Order.

15.     The Ancillary Order also requires the Debtors to fully cooperate with the Monitor in the exercise of its powers under the Ancillary Order.

16.     As noted in the Canadian Sale Orders and the Sale Recognition Order of this Court, TransPecos, a Texas state savings bank, asserted an ownership interest in two items of heavy equipment in the Debtors' possession -- a drill rig and a mud recycling system (together, the "Disputed Assets").  The Disputed Assets were carved out of the Canadian Sale Orders as "excluded assets".  The Debtors and TransPecos have not yet resolved their disputes over the Disputed Assets.  The Ancillary Order provides that the Disputed Assets shall not be sold or otherwise disposed of pending (i) a consensual resolution being agreed to between the DIP Lender and TransPecos, in consultation with the Monitor; or (ii) further order of the Canadian Court.

17.     The Ancillary Order also provides for certain Releases.  Specifically, the Ancillary Order provides that the Released Parties (as defined in the Ancillary Order) are:

> deemed to be forever and irrevocably released and discharged from any and all present and future liabilities, claims (including, without limitation, breach of trust claims or claims for contribution or indemnity), indebtedness, demands, actions, causes of action, counterclaims, suits, damages, judgments, executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, duties, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in whole or in part on any act or omission, transaction, offer, dealing, or other fact, matter, occurrence or thing existing or taking place prior to the date hereof (collectively, the "**Released Claims**"), which Released Claims are hereby and shall be deemed to be fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties, provided that nothing in this paragraph shall waive, discharge, release, cancel or bar

(i) any claim that either the Bank of Nova Scotia or 1941529 Alberta Ltd. may have against Robert Corey Hawtin or Lucie Andlauer, or any other individual that granted an undertaking to inject funds or guarantee in favour of The Bank of Nova Scotia in relation to indebtedness of the Applicants (or any one or more of them) to The Bank of Nova Scotia; (ii) any claim with respect to an act or omission that is determined by a court of competent jurisdiction to have constituted actual fraud or wilful misconduct, or (iii) any claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA.[5]

18.     The Releases are substantially similar to those already approved in the Canadian Sale Orders and the Sale Recognition Order.

19.     Finally, the Ancillary Order provides for the termination of the Canadian Proceedings upon the Monitor filing an executed certificate certifying that to the Monitor's knowledge, all matters to be attended to in connection with the Canadian Proceedings have been completed (including the completion of the distributions and reaching a resolution in respect of the Disputed Assets).

20.     The Ancillary Order also includes a request for this Court's "aid and recognition" in giving effect to the Ancillary Order.[6]

> **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, and, regulatory or administrative bodies, having jurisdiction in Canada or in any other foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor, and their respective agents in carrying out the terms of this Order. All courts, tribunals and, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

---

[5] Ancillary Order at ¶ 23.

[6] Ancillary Order at ¶ 31.

## RELIEF REQUESTED

21.     By this Motion, the Foreign Representative respectfully requests (i) that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**: (i) recognizing and enforcing the Distribution Order and the Ancillary Order; (ii) providing that, upon filing of a notice of full administration (the "Notice of Full Administration"), attached to this Motion as **Exhibit B**, the Court shall enter the order attached to this Motion as **Exhibit C** (the "Proposed Case Closing Order") closing the Chapter 15 Cases; and (iii) granting any other relief that may be necessary and appropriate, including entry of a final decree after entry of the Proposed Case Closing Order.

## BASIS FOR RELIEF REQUESTED

A.     **The Court should recognize and give force and effect to the Distribution Order and the Ancillary Order within the territorial jurisdiction of the United States.**

22.     The Foreign Representative respectfully submits that the Court should recognize and give effect to the Distribution Order and the Ancillary Order within the territorial jurisdiction in the United States.  Chapter 15 of the Bankruptcy Code empowers "courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objective of the chapter in accordance with comity."[7]  The Court has the power to provide additional assistance to a foreign representative under the Bankruptcy Code or other laws of the United States, consistent with the principles of comity.[8]

---

[7]  *In re Rede Energia, S.A.*, 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014 ) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333-34 (S.D.N.Y. 2008)); *see also In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) ("chapter 15 maintains—and in some respects enhances—the 'maximum flexibility . . . that section 304 provided bankruptcy courts in handling ancillary cases in light of principles of international comity and respect for the laws and judgments of other nations") (internal citations omitted), *aff'd* 371 B.R. 10 (S.D.N.Y. 2007).

[8]  *See* 11 U.S.C. §§ 1507 and 1521.

23.     Section 1521(a) of the Bankruptcy Code authorizes this Court, "at the request of the foreign representative, [to] grant any appropriate relief"[9] to the Foreign Representative, provided that the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected."[10]  Moreover, the Court may provide "additional assistance" to the Foreign Representative,[11] and may grant recognition of the Distribution Order and the Ancillary Order so long as recognition is not "manifestly contrary to the public policy of the United States."[12]

24.     Recognition of the Distribution Order and the Ancillary Order is appropriate under section 1507.[13] Courts in the United States have routinely concluded that the CCAA is a sound statutory insolvency scheme that fosters reorganization in a manner consistent with fundamental principles and policies of the United States.[14]  Here, the Court may exercise its discretion under sections 1507 and 1521 of the Bankruptcy Code, and consistent with the principles of comity, to recognize and enforce the Distribution Order and the Ancillary Order.[15] The relief requested by both the Distribution Order and the Ancillary Order is consistent with,

---

[9]  11 U.S.C. § 1521(a).

[10]  11 U.S.C. § 1522.

[11]  11 U.S.C. § 1507(a).

[12]  11 U.S.C. § 1506.

[13]  *First*, the CCAA provides for such a procedure, as previously recognized by numerous United States courts, and a scheme for the "equitable, orderly, and systematic" distribution. *See e.g. Allstate Life Ins. v. Linter Grp.*, 994 F.2d 996, 1000 (2d Cir. 1993). *Second*, the Debtors' creditors and parties in interest have been treated fairly in connection with the Debtors obtaining the Vesting Orders. Such parties have been provided proper and sufficient notice of, and had the opportunity to raise any objections to, the substantive relief requested in the Vesting Orders. *Third*, preferential or fraudulent transfers are not permitted under the CCAA, which provides for the recovery of such transfers.

[14]  *See Cornfeld v. Invs. Overseas Servs.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) ("The fact that the foreign country involved is Canada is significant. It is 'well-settled' in New York that the judgments of the Canadian courts are to be given effect under principles of comity. . . . More importantly, Canada is a 'sister common law jurisdiction with procedures akin to our own,' and thus there need be no concern over the adequacy of the procedural safeguards of Canadian proceedings.") (quoting *Clarkson v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976)); *see also In re Grant Forest Prod.*, 440 B.R. 616, 622 (Bankr. D. Del. 2010); *In re Crystallex Int'l Corp.*, 2022 Bankr. LEXIS 3339, 2022 WL 17254660, at *6 (Bankr. D. Del. Nov. 28, 2022).

[15]  *See generally In re ABC Learning Centres Ltd.*, 720 F.3d 301, 306 (3d Cir. 2013) ("Foreign Representatives can access U.S. courts to request enforcement of orders of the foreign proceeding and to stay actions against foreign debtors' property in the United States.").

and not contrary to, the public policy of the United States and the Foreign Representative submits that the Court has the discretion to enter the Proposed Order recognizing and enforcing the Distribution Order and the Ancillary Order, including the Releases granted in the Ancillary Order.

25.     Section 1506 of the Bankruptcy Code provides that "[n]othing in [chapter 15] prevents the court from refusing to take an action governed by [chapter 15] if the action would be manifestly contrary to the public policy of the United States."[16]  Courts have emphasized that section 1506 of the Bankruptcy Code applies only in very narrow circumstances where the most fundamental policies of the United States are implicated.[17]  Indeed, "[a] U.S. bankruptcy court is not required to undertake an independent determination about the propriety of individual acts of a foreign court."[18]

26.     The Releases, as approved by the Canadian Court, cover any and all present and future claims against the Released Parties, except that the Releases do not release (i) certain claims that BNS or 1941529 Alberta Ltd. may have against certain named individuals, (ii) any claim with respect to an act or omission that is determined by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, or (iii) any claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA.

27.     The Foreign Representative seeks recognition and enforcement of the Releases by this Court as granted by the Canadian Court. The Canadian Court determined that

---

[16]  11 U.S.C. § 1506.

[17]  *See In re ABC Learning Ctrs.,* 728 F.3d 301, 309 (3d Cir. 2013); *see Flynn v. Wallace (In re Irish Bank  Res. Corp.),* 538 B.R. 692, 698 (D. Del. 2015) (refusing to find a public-policy exception where recognition did not "'impinge severely a U.S. constitutional or statutory right'") (quoting *ABC Learning Ctrs.*, 728 F.3d at 309); *In re Rede Energia S.A.,* 515 B.R. 69, 92 (Bankr. S.D.N.Y. 2014) ("[T]he public policy exception is clearly drafted in narrow terms and the 'few reported cases that have analyzed section 1506 at length recognize that it is to be applied sparingly.'") (quoting *In re Toft*, 453 B.R. 186, 193 (Bankr. S.D.N.Y. 2011)).

[18]  *In re Metcalfe & Mansfield Alt. Inv.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010); *see also In re PT Bakrie Telecom Tbk,* 601 B.R. 707, 724 (Bankr. S.D.N.Y. 2019).

the Releases are justified, reasonable, and appropriate in the circumstances. Each of the Released Parties has participated, contributed, and/or supported the Debtors' restructuring efforts both prior to and/or after the commencement of the Canadian Proceedings. The Foreign Representative submits that the Releases, as approved by the Canadian Court, are fair and reasonable, appropriately tailored to the circumstances, are not overly broad, and are in line with releases granted in the context of similar proceedings under the CCAA.

28.     The Foreign Representative is fully cognizant of the Supreme Court's ruling in in *Harrington v. Purdue Pharma L.P.,*[19] which narrowly held that nonconsensual third-party releases in a chapter 11 plan were not authorized pursuant to section 1123 of the Bankruptcy Code.[20] For the reasons discussed below, the *Purdue* ruling does not prohibit this Court—whether pursuant to section 1506's public policy exception or otherwise—from recognizing and giving effect in the U.S. to an Ancillary Order containing the Releases.

29.     By its own terms, the Supreme Court's holding in *Purdue* was limited to the narrow question presented there and is inapplicable to the issue of whether this Court should recognize the Releases in the Ancillary Order in the context of a chapter 15 case. The *Purdue* Court ruled, based on statutory interpretation of section 1123 of the Bankruptcy Code and not based on public policy, that nonconsensual third-party releases in chapter 11 plans are not authorized under the Bankruptcy Code.[21] The Supreme Court expressly addressed the limited scope of its holding:

> As important as the question we decide today are ones we do not . . . Confining ourselves to the question presented, we hold only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter

---

[19] 603 U.S. 204 (2004) ("*Purdue*").

[20] *Id.* at 226-27.

[21] *Id.*

11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.[22]

30.     Given that limited scope, *Purdue* has no application to any aspect of chapter 15 proceedings or to the recognition in the U.S. of a foreign court's orders. On this rationale alone, *Purdue* does not impact recognition of the Ancillary Order containing the Releases.

31.     The *Purdue* Court's narrow tailoring of its ruling makes sense in light of the underpinnings of the holding. The *Purdue* decision was based on the statutory construction of section 1123(b)(6) of the Bankruptcy Code (including the context and history of such provision), not on any broader holding that non-consensual third-party releases are manifestly contrary to the public policy of the United States. *Id.* at 215–24. In fact, the Supreme Court explicitly disregarded public policy arguments:

> Both sides of this policy debate may have their points. But, in the end, *we are the wrong audience for them*. As the people's elected representatives, Members of Congress enjoy the power, consistent with the Constitution, to make policy judgments about the proper scope of a bankruptcy discharge. Someday, Congress may choose to add to the bankruptcy code special rules for opioid-related bankruptcies as it has for asbestos-related cases. Or it may choose not to do so. Either way, if a policy decision like that is to be made, it is for Congress to make.[23]

32.     This is especially significant in light of the fact that section 1506 is sparingly applied by courts. Section 1506 "requires a narrow reading" and "does not create an exception for any action under Chapter 15 that may conflict with public policy, but only an action that is '*manifestly* contrary.'"[24]  The public-policy exception in section 1506 ought to be invoked by courts only "'where the procedural fairness of the foreign proceeding is in doubt or

---

[22]  *Id.* at 226-27.

[23]  *Id.* at 226 (emphasis added).

[24]  *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 139 (2d Cir. 2013).

cannot be cured by the adoption of additional protections' or where recognition 'would impinge severely a U.S. constitutional or statutory right.'"[25] Accordingly, merely because certain relief would not be available under the Bankruptcy Code, does not make that relief "manifestly" contrary to U.S. public policy or within the ambit of section 1506.[26] For these reasons, *Purdue* does not render the Releases manifestly contrary to public policy under section 1506.

33. Because the Releases are not manifestly contrary to U.S. public policy, principles of comity favor recognizing the Releases to the extent granted by the Canadian Court. Section 1501's statement regarding the purpose of Chapter 15 "highlights that the Court should be guided by the main policy goals of chapter 15—cooperation and comity with foreign courts and deference to those courts within the confines established by chapter 15."[27] Here, if the Releases are granted by the Canadian Court but not given full force and effect in the United States, U.S. creditors would have an advantage over Canadian creditors with respect to any claims against the Released Parties, undermining the relief the Canadian Court would be granting in the Ancillary Order. Under principles of international comity, the Court should recognize the Releases to the extent approved by the Canadian Court.

---

[25] *ABC Learning Ctrs.*, 728 F.3d at 309 (quoting *In re Qimonda AG Bankr. Litig.*, 433 B.R. 537, 570 (E.D. Va. 2010)); *accord, Fairfield Sentry*, 714 F.3d at 139 (ruling that section 1506 applies only to actions that offend "'*the most fundamental policies of the United States*'" and is "invoked only 'under exceptional circumstances concerning matters of fundamental importance [to the United States].'") (quoting 2005 House Rep. at 109; *Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency* ¶ 89); *In re Crédito Real, S.A.B. de C.V., SOFOM E.N.R.*, 670 B.R. 150, 162 (Bankr. D. Del. 2025) ("Refusing to take an action under Bankruptcy Code section 1506 is an extraordinary act. That section should be 'narrowly interpreted, as the word "manifestly" in international usage restricts the public policy exception to the most fundamental policies of the United States.' As a consequence, that authority rarely is exercised.") (quoting 2005 House Report; collecting cases discussing the narrow construction of section 1506).

[26] *See, e.g., id.* 162-63 ("Relief that is granted in a foreign proceeding does not have to be identical to relief that might be available in a U.S. proceeding."); *In re Qimonda*, 433 B.R. at 570 ("The mere fact of conflict between foreign law and U.S. law, absent other considerations, is insufficient to support the invocation of the public policy exception.").

[27] *Crédito Real,* 670 B.R. at 161.

34.     In *Crédito Real*, the United States Bankruptcy Court for the District of Delaware recognized and enforced in the United States a Mexican plan of reorganization containing nonconsensual third-party releases.[28]  In granting recognition, the court explained why the Supreme Court's ruling in *Purdue* did not prohibit the bankruptcy court from recognizing a foreign plan's nonconsensual third-party releases pursuant to sections 1521(a)(7) and 1507(a) of the Bankruptcy Code.[29]

35.     The *Crédito Real* court's ruling first addressed the argument that the "catchall" provisions of sections 1521(a)(7) and 1507(a) should be interpreted the same way that the *Purdue* Court interpreted the catchall of section 1123(b)(6). Judge Horan rejected this analogy based on the differing statutory constructions of the Bankruptcy Code sections. In comparing section 1521(a)(7) against section 1123(b)(6), through the lens of *Purdue*, Judge Horan explained:

> [I]n section 1123(b), rather than provide specific prohibited relief, Congress directs courts to look to the whole of the Bankruptcy Code to determine if the requested provision is consistent with it. In Purdue, the Supreme Court framed this section as one that "set[s] out a detailed list of powers, followed by a catchall." It explained, "Congress could have said in [section 1123(b)](6) that 'everything not expressly prohibited is permitted[]'"but instead limited it to "any other appropriate provision not inconsistent with the applicable provisions of this title." In comparison, in section 1521(a)(7), Congress did expressly enumerate what it wanted to prohibit; in a chapter 15 case, a court cannot grant relief under sections 522, 544, 545, 547, 548, 550, and 724(a). By specifically enumerating relief that the court cannot grant under section 1521, Congress more concretely defined the outer bounds of what the court can grant, thus also more concretely defining what is included in what the court can grant, bearing in mind the guiding principles of comity and cooperation.[30]

---

[28]  *See generally id.*

[29]  *See generally id; see also* Order Recognizing and Enforcing the Ancillary Order, *In re Nexii Building Sol.*, No. 24-10026 (JKS) (Bankr. D. Del. July 22, 2024), ECF No. 66 (granting, on an uncontested basis, recognition of an "Ancillary Order" in a CCAA proceeding that included certain third-party releases after considering briefing by the foreign representative that affirmatively raised and addressed why such relief is permissible even in light of *Purdue*).

[30]  *Id.* at 167-68 (quoting *Purdue*, 603 U.S. at 218).

36.     Simply put, "[b]y establishing a list of relief that courts should not grant under section 1521(a)(7), the section implies that other forms of relief not expressly prohibited are permitted. Therefore, enforcing foreign orders providing for nonconsensual third-party releases is within the scope of authority that section 1521(a) provides."[31]

37.     Likewise, regarding section 1507, the court in *Crédito Real* observed that section 1507 has express limitations to the power it grants, requiring a court to look to the remainder of "this chapter" (i.e.*,* chapter 15) for such limits.[32] This differs from section 1123(b) in two key respects. First, section 1507 "differs from section 1123(b)(6)'s instruction to look at subsections (1)–(5) to contextualize appropriate relief because chapter 15 covers a broader array of topics than section 1123(b)(1)–(5), which is limited to matters concerning and connected to the debtor."[33] Second, while section 1123(b)(6) prohibits relief inconsistent with applicable provisions of "this title" (*i.e.,* the Bankruptcy Code), section 1507 references chapter 15 specifically, which has as its purpose the promotion of comity and international cooperation.[34] "Accordingly, relief that is appropriate subject to limitations in chapter 15 must be different than relief that is not inconsistent with the applicable provisions of the Bankruptcy Code."[35] Moreover, Judge Horan observed that section 1507(b) explicitly provides a list of factors for a court to consider, when analyzing whether to provide "additional assistance." Thus "section 1507 . . . differs from section 1123(b) because section 1123(b) does not expressly establish specific

---

[31] *Id*. at 168.

[32] *Id*.

[33] *Id*.

[34] *See id*.

[35] *Id.*

boundaries; instead, it directs courts to look to the rest of the Bankruptcy Code to determine whether a provision is appropriate."[36]

38. Judge Horan also rejected the argument that recognizing the Mexican plan's releases were manifestly contrary to U.S. policy, noting that section 1506's public-policy exception is to be narrowly applied.[37] The court observed that nonconsensual third-party releases are explicitly provided for in asbestos cases under section 524(g).[38] Moreover, the Court emphasized that the *Purdue* Court explicitly ruled that Congress had not, but *could*, authorize nonconsensual third-party releases in Chapter 11—if this would infringe on a constitutional right, the Supreme Court would not have suggested Congress could allow it.[39] In sum "[l]ack of specific availability in U.S. courts does not equate to manifest contrariness to U.S. public policy, especially where, as here, the contested relief is available in other contexts and could be made available more broadly by a simple act of Congress."[40] *Id.*

39. The *Crédito Real* court's reasoning applies with equal force here. Just as the enforcement of the third-party releases in the plan in *Crédito Real* was within the ambit of relief available under section 1521(a) and 1507(a), the enforcement of the Releases here is permissible under those sections and not prohibited by *Purdue*. Specifically in connection with section 1507(a), recognition of the Releases is in line with the considerations set forth in section 1507(b). Recognizing the Releases ensures just treatment of all claimholders across borders; failing to recognizing the Releases would give creditors in the U.S. an advantage over Canadian creditors. Placing all creditors on equal footing does not prejudice U.S. creditors, lead to

---

[36] *Id.* at 169.
[37] *Id*. at 163.
[38] *Id*. at 174.
[39] *Id.* at 173.
[40] *Id.* at 173-74.

preferential or fraudulent dispositions of the Debtors' property, or otherwise impede a fair distribution of assets of the Debtors or proceeds of the SISP. Likewise, for the reasons argued above, recognition of the Releases is not manifestly contrary to U.S. public policy.

40.     Accordingly, the Distribution Order and the Ancillary Order, and the Releases granted therein, should appropriately be recognized by this Court.

**B.     The case closing procedure should be approved.**

41.     Upon entry of an order recognizing and enforcing the Distribution Order and the Ancillary Order, entry of the Proposed Order by this Court, and the termination of the Canadian Proceedings in accordance with the Ancillary Order, the Foreign Representative has determined that there will no longer be a reason for these Chapter 15 Cases to remain open.

42.     Section 1517(d) of the Bankruptcy Code provides that a case under chapter 15 of the Bankruptcy Code may be closed in the manner prescribed under section 350 of the Bankruptcy Code,[41] which, in turn, provides that a case shall be closed "[a]fter an estate is fully administered."[42]

43.     A chapter 15 case is deemed to be fully administered when the purpose for the foreign representative's appearance is complete.[43] If no objection to a final report is filed after 30 days' notice, the case is deemed to have been fully administered and the chapter 15 case may be closed.[44]

44.     Once the Monitor files the requisite certificate in accordance with the Ancillary Order, the Canadian Proceedings will be terminated and the purpose of the Foreign

---

[41]  11 U.S.C. § 1517(d).

[42]  11 U.S.C. § 350(a).

[43]  *See* Fed. R. Bankr. P. 5009(c).

[44]  *Id.*; Local Rule 5009-2(b); *In re Ginsberg*, 164 B.R. 870, 873 (Bankr. S.D.N.Y. 1994).

Representative's appearance will be complete. There will be no outstanding motions, contested matters, or adversary proceedings in these Chapter 15 Cases.[45]

45. Bankruptcy Rule 5009(c) also requires that the foreign representative file a final report when the purpose of the foreign representative's appearance has been completed, which report should describe the nature and results of the foreign representative's actions in the chapter 15 case.[46] Local Rule 5009-2 further provides that the final report required by Bankruptcy Rule 5009(c) must be included in a motion seeking a final decree closing a chapter 15 case. To reduce the costs and expenses for the benefit of the Debtors and their creditors, the Foreign Representative requests that this Motion and the Ancillary Order (to be supplemented by the filing of the Notice of Full Administration) be deemed as the Foreign Representative's final report under Bankruptcy Rule 5009(c) and the written motion seeking entry of a final decree in these Chapter 15 Cases under Local Rule 5009-2, subject to the 30-day objection period upon the filing of the Notice of Full Administration. Upon the filing of a certification of no objection or a certification of counsel indicating that no objections were received to the Notice of Full Administration, or that any such objections have been resolved by the Foreign Representative and the applicable objecting party, the Foreign Representative respectfully requests that the Court enter the Proposed Case Closing Order.

46. The Foreign Representative submits that this Motion and the Ancillary Order, together with the other filings in these Chapter 15 Cases and the Canadian Proceedings, fully describe the activities that the Foreign Representative took or needs to take to fully administer these Chapter 15 Cases, their nature, and likely result, and neither notice nor ability to object to the closing of these Chapter 15 Cases will be compromised under the foregoing

---

[45] The Foreign Representative is aware of a recent motion for relief from stay being filed in these cases. The Foreign Representative will not file the Notice of Full Administration until such motion has been fully resolved.

[46] Fed. R. Bankr. P. 5009(c).

procedure. Accordingly, by this Motion, the Foreign Representative submits that the Chapter 15 Cases will soon be ready for closure and thus seeks approval of the foregoing procedures for their closure.

## NOTICE

47.     In accordance with Local Rule 5009-2, notice of this Motion will be provided to: (i) all parties specified in Bankruptcy Rule 5009(c); (ii) all other parties who have filed a request for notice in these Chapter 15 Cases; and (iii) any other parties as the Court may direct. In light of the nature of the relief requested herein, the Foreign Representative submits that no other or further notice of this Motion is necessary or required.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that the Court enter the Proposed Order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:  December 17, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Steven W. Golden*
Steven W. Golden (DE Bar No. 6807)
Mary F. Caloway (DE Bar No. 3059)
Brooke E. Wilson (*admitted pro hac vice*)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Tel:  302-652-4100
Fax: 302-652-4400
sgolden@pszjlaw.com
mcaloway@pszjlaw.com
bwilson@pszjlaw.com

*Attorneys for Foreign Representative*

# **EXHIBIT A**

Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| STS RENEWABLES LTD., et al.,[1] | Case No. 25-10884 (KBO) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |

## ORDER (I) RECOGNIZING AND ENFORCING DISTRIBUTION ORDER AND ANCILLARY ORDER, (II) APPROVING THE PROCEDURE GOVERNING CLOSING OF CHAPTER 15 CASES AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") of STS Renewables Ltd. ("STS"), in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in connection with the Debtors' reorganization proceedings under Canadian law currently pending (the "Canadian Proceedings"), for the entry of an order, pursuant to sections 105(a), 350, 1517(d), 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), (i) recognizing and enforcing the Distribution Order and the Ancillary Order (both as defined in the Motion), (ii) approving the procedure governing closing of these chapter 15 cases (the "Chapter 15 Cases") and (iii) granting related relief; the Court finding that (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (c) venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and that the relief requested is in the best interest of the Debtors, their creditors, and other parties in interest in the Chapter 15 Case; and all creditors and other

---

[1] The Debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with the last four digits of each Debtor's unique identifier, are: STS Renewables Ltd. (6458); 10531618 Canada Inc., f/k/a Subterra Capital Partners Inc. (1618); 14878868 Canada Ltd., f/k/a Subterra Development Ltd. (8868); 2425036 Inc., f/k/a Subterra Capital Partners US Inc. (0344); and 1001374205 Ontario Inc. The Debtors' service address for purposes of these Chapter 15 Cases is 3400 One First Canadian Place, P.O. Box 130, Toronto, ON, M5X 1A4.

parties in interest, including the Debtors, are sufficiently protected in the grant of relief ordered hereby in compliance with section 1522(a) of the Bankruptcy Code; and after due deliberation and sufficient cause appearing therefor,

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Distribution Order, a copy of which is attached hereto as <u>Exhibit 1</u>, is hereby recognized and enforced and given full force and effect in the United States and is binding on all persons subject to this Court's jurisdiction pursuant to sections 1521, 1525, and 1527 of the Bankruptcy Code.

3.      The Ancillary Order, a copy of which is attached hereto as <u>Exhibit 2</u>, is hereby recognized and enforced and given full force and effect in the United States and is binding on all persons subject to this Court's jurisdiction pursuant to sections 1521, 1525, and 1527 of the Bankruptcy Code.

4.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, including, but not limited to Bankruptcy Rules 7062 and 1018, (a) this Order shall be effective immediately and enforceable upon its entry; (b) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Foreign Representative or the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

5.      The Foreign Representative is authorized to seek entry of an order closing these Chapter 15 Cases by filing and serving a Notice of Full Administration, subject to a thirty (30) day objection period after service of the Notice of Full Administration.  If no objections are

filed upon the expiration of the thirty (30) day objection period, the Foreign Representative may file a certificate of no objection along with the Proposed Case Closing Order for entry by the Court.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# **EXHIBIT B**

Notice of Full Administration

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| STS RENEWABLES LTD., et al.,[1] | Case No. 25-10884 (KBO) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |

## NOTICE OF FULL ADMINISTRATION OF CHAPTER 15 CASES

**PLEASE TAKE NOTICE** that on December [●], 2025, the Foreign Representative[2] filed the *Motion for Entry of Order (I) Recognizing and Enforcing Distribution Order and Ancillary Order, (II) Approving the Procedure Governing Closing of Chapter 15 Cases, and (III) Granting Related Relief* [Docket No. ●] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that on [●], 2025, the Court entered the *Order (I) Recognizing and Enforcing Distribution Order and Ancillary Order, (II) Approving the Procedure Governing Closing of Chapter 15 Cases, and (III) Granting Related Relief* [Docket No. ●] (the "Recognition Order").

**PLEASE TAKE FURTHER NOTICE** that on [●], 2026, PricewaterhouseCoopers Inc., in its capacity as the court-appointed monitor in the Canadian Proceedings (the "Monitor") filed a *Monitor's Certificate* in the Canadian Proceedings.  Information on the Canadian Proceedings and documents filed therein, including the *Monitor's Certificate*, reports from the Monitor, and motion materials, can be found on the Monitor's website at https://www.pwc.com/ca/en/services/insolvency-assignments/stsrenewables.html.

**PLEASE TAKE FURTHER NOTICE** that the Recognition Order authorizes the Foreign Representative to seek entry of an order closing these Chapter 15 Cases by filing and serving this Notice of Full Administration, subject to a thirty (30) day objection period from the date of service of this Notice of Full Administration.

**PLEASE TAKE FURTHER NOTICE** that all transactions in the Canadian Proceedings have occurred and the Canadian Proceedings have been terminated.  Therefore, these Chapter 15 Cases have been fully administered.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to entry of the Proposed Case Closure Order must be made by [●], 2026.  All objections must: (a) be in writing, (b) set forth the factual and legal bases for the objection in detail, (c) be filed with the United States Bankruptcy Court for the District of Delaware, Office of the Clerk of the Court, 824 Market Street, Third Floor, Wilmington, Delaware 19801, and (d) be served upon counsel for the Foreign Representative, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE, 19801 Attn: Steven W. Golden

---

[1]  The Debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with the last four digits of each Debtor's unique identifier, are: STS Renewables Ltd. (6458); 10531618 Canada Inc., f/k/a Subterra Capital Partners Inc. (1618); 14878868 Canada Ltd., f/k/a Subterra Development Ltd. (8868); 2425036 Inc., f/k/a Subterra Capital Partners US Inc. (0344); and 1001374205 Ontario Inc. The Debtors' service address for purposes of these Chapter 15 Cases is 3400 One First Canadian Place, P.O. Box 130, Toronto, ON, M5X 1A4.

[2]  Capitalized terms not defined in this Notice have the meanings given to them in the Motion.

(sgolden@pszjlaw.com) and Mary F. Caloway (mcaloway@pszjlaw.com) so as to be **actually received on or before [●], 2026 at 4:00 p.m. (ET)**.

      **PLEASE TAKE FURTHER NOTICE THAT IF NO RESPONSES OR OBJECTIONS ARE RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE FOREIGN REPRESENTATIVE WITHOUT FURTHER NOTICE OR HEARING UPON FILING OF CERTIFICATION OF NO OBJECTION.**

Dated: **[●],** 2025           **PACHULSKI STANG ZIEHL & JONES LLP**

           */s/ Steven W. Golden*
           Steven W. Golden (DE Bar No. 6807)
           Mary F. Caloway (DE Bar No. 3059)
           Brooke E. Wilson (*admitted pro hac vice*)
           919 North Market Street, 17th Floor
           Wilmington, Delaware 19899-8705
           Tel:  302-652-4100
           Fax: 302-652-4400
           sgolden@pszjlaw.com
           mcaloway@pszjlaw.com
           bwilson@pszjlaw.com

           *Attorneys for Foreign Representative*

**<u>EXHIBIT C</u>**

Proposed Case Closing Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| STS RENEWABLES LTD., | Case No. 25-10884 (KBO) |
| Debtor in a Foreign Proceeding. | |

| | |
|---|---|
| In re: | Chapter 15 |
| EARTH DRILLING CO. LTD., | Case No. 25-10885 (KBO) |
| Debtor in a Foreign Proceeding. | |

| | |
|---|---|
| In re: | Chapter 15 |
| ON TRACK DRILLING INC. | Case No. 25-10886 (KBO) |
| Debtor in a Foreign Proceeding. | |

| | |
|---|---|
| In re: | Chapter 15 |
| SUBTERRA CAPITAL PARTNERS INC. | Case No. 25-10887 (KBO) |
| Debtor in a Foreign Proceeding. | |

| | |
|---|---|
| In re: | Chapter 15 |
| SUBTERRA DEVELOPMENT LTD. | Case No. 25-10888 (KBO) |
| Debtor in a Foreign Proceeding. | |

| | |
|---|---|
| In re: | Chapter 15 |
| STS RENEWABLES EARTH USA ACQUISITION CO. LTD., | Case No. 25-10889 (KBO) |
| Debtor in a Foreign Proceeding. | |

| | |
|---|---|
| In re: | Chapter 15 |
| EARTH DRILLING CO. LTD., | Case No. 25-10890 (KBO) |
| Debtor in a Foreign Proceeding. | |

| In re: | Chapter 15 |
| --- | --- |
| SUBTERRA CAPITAL PARTNERS US INC. | Case No. 25-10891 (KBO) |
| Debtor in a Foreign Proceeding. | |
| In re: | Chapter 15 |
| HARRIS EXPLORATION DRILLING & ASSOCIATES, INC. | Case No. 25-10892 (KBO) |
| Debtor in a Foreign Proceeding. | |

## ORDER CLOSING CHAPTER 15 CASES

Upon consideration of the *Motion for Entry of Order (I) Recognizing and Enforcing Distribution Order and Ancillary Order, (II) Approving the Procedure Governing Closing of Chapter 15 Cases, and (III) Granting Related Relief* [Docket No. ●] of STS Renewables Ltd., in its capacity as the authorized foreign representative (the "Foreign Representative" or "Foreign Representative") for the above-captioned foreign debtors (the "Debtors") in proceedings (the "Canadian Proceedings") commenced under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36, as amended, and pending in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"); and upon consideration of any responses or oppositions to the Motion, and after due and sufficient notice of and hearing on the Motion; and upon entry by this Court of the *Order (I) Recognizing and Enforcing Distribution Order and Ancillary Order, (II) Approving the Procedure Governing Closing of Chapter 15 Cases, and (III) Granting Related Relief* [Docket No. ●] (the "Recognition Order"), granting the Foreign Representative, among other relief, the authority to submit this Order upon the filing and service of the Notice of Full Administration (in substantially the form attached to the Motion as Exhibit B) and the expiration of a thirty (30) day

objection period; and the Foreign Representative having filed such Notice of Full Administration on [●], 2026 [D.I. [●]]; and the Recognition Order being a final, non-appealable order not subject to a stay; and a hearing having been held, if applicable, to consider the relief considered herein; and it appearing that such relief is in the best interests of the Debtors and other parties in interest in these Chapter 15 Cases; and the Court finding that (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (c) venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410; and due and sufficient notice of the Motion, Final Report, and Recognition Order having been given; and it appearing that no other or further notice need be provided; and that the relief requested is in the best interest of the Debtors, its creditors, and other parties in interest in the Chapter 15 Case; and all creditors and other parties in interest, including the Debtors, are sufficiently protected in the grant of relief ordered hereby in compliance with section 1522(a) of the Bankruptcy Code; and after due deliberation and sufficient cause appearing therefor,

**<u>NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:</u>**

1. These Chapter 15 Cases have been fully administered. In accordance with sections 350(a) and 1517(d) of the Bankruptcy Code, Bankruptcy Rule 5009(c) and Local Rule 5009-2(a), the jointly administered Chapter 15 Cases styled *In re STS Renewables Ltd., et al.* Case No. 25-10884, are closed effective immediately as of the date of entry of this Order. The Clerk of the Court is hereby respectfully directed to close the above-captioned cases.

2. The Recognition Order, as supplemented by the Notice of Full Administration, collectively referred to in this Order as the "Final Report," satisfies the requirement of Bankruptcy Rule 5009(c) and the Motion satisfies the requirement of a written motion for decree closing the Chapter 15 Cases under Local Rule 5009-2.

3.      This Order is without prejudice to the right of the Foreign Representative to seek an order reopening these Chapter 15 Cases under section 350(b) of the Bankruptcy Code or Local Rule 5009-2(a).

4.      All orders entered by this Court in these Chapter 15 Cases shall continue in full force and effect and survive entry of this Order.

5.      This Court shall retain jurisdiction with respect to the implementation, enforcement, amendment or modification of this Order, the Recognition Order and any other request for additional relief in or related to the Chapter 15 Cases.